UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
NO. 3:13Cv-318-R

| | |
|---|---|
| BETHENY GREEN )<br>and )<br>RICHARD MICHAELS )<br>    *Plaintiffs* )<br>v. )<br>)<br>)<br>WOODHAVEN COUNTRY CLUB, INC. )<br>7200 Woodhaven Road )<br>Louisville, Kentucky 40291 )<br>  <u>Serve</u>: Shane Chance Maguire )<br>        5408 South Watterson Trail )<br>        Louisville, Kentucky 40291 )<br>)<br>    *Defendant* ) | **COMPLAINT**<br>*"Electronically Filed"* |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

Come now the Plaintiffs, Betheny Green and Richard Michaels, by and through counsel, and for their Complaint against the Defendant, Woodhaven Country Club, Inc., state as follows:

## JURISDICTION

1. That this action arises under the laws of the United States, particularly under the provisions of 29 USC §2601 et seq. (Family and Medical Leave Act of 1993), and 42 U.S.C. §12101 et seq. (Americans with Disabilities Act of 1990), as well as KRS 344.010 et seq. (Kentucky Civil Rights Act).

2. That this Court possesses jurisdiction for this case under the provisions of Title 28 of the United States Code, §1331 and §1343, and possesses pendant jurisdiction of claimed violations of the Kentucky Civil Rights Act (KRS 344.010 et seq.) pursuant to 28 USC §1367.

3. That this Court possesses pendent and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §1367.

**PARTIES**

4. That the Plaintiff, Betheny Green, is, and at all times relevant hereto has been, a resident of Louisville, Jefferson County, Kentucky.

5. That the Plaintiff, Richard Michaels, is, and at all times relevant hereto has been, a resident of Louisville, Jefferson County, Kentucky.

6. That the Defendant, Woodhaven Country Club, Inc. (hereinafter "Woodhaven"), is, and at all relevant times hereto has been, a Kentucky corporation in good standing, licensed to do, and doing, business within the Commonwealth of Kentucky in Louisville, Jefferson County, Kentucky and continuously employed Plaintiff Betheny Green from April 15, 2011 to August 7, 2012, and Plaintiff Michaels from April 9, 2009 to March 12, 2012.

7. That Defendant is engaged in commerce and/or in a business affecting interstate commerce; employs, and at all relevant times did employ, more than 50 employees within a 75-mile radius of Plaintiffs' worksite; and is otherwise an "employer" as defined by the Family Medical Leave Act, Americans with Disability Act, and Kentucky Civil Rights Act.

8. That Plaintiffs Green and Michaels each worked for Defendant for more than 12 months, worked more than 1,250 hours during the 12 months immediately preceding their terminations, each had a serious medical condition and is otherwise an "eligible employee" as defined by the Family Medical Leave Act, Americans with Disability Act, and Kentucky Civil Rights Act.

9. That Plaintiffs Green and Michaels are each a qualified individual with a disability as defined by 42 U.S.C. §12101 et seq. and KRS 344.010 et seq. Plaintiff Green suffers

from debilitating endometriosis which have required at least 12 prior gynecological surgeries in the last 17 years. Plaintiff Michaels previously sustained a knee injury which has resulted in multiple surgical procedures and has limited his ability to walk. Both Plaintiffs suffer from a physical impairment that substantially limits one or more major life activities, have a record of such impairment, and were regarded and perceived by Defendant as having such an impairment.

10. That the unlawful termination of Plaintiff Green complained of herein occurred in Louisville, Jefferson County, Kentucky on or about August 7, 2012. The unlawful termination of Plaintiff Michaels occurred on or about March 12, 2012.

## FACTS

11. That on or about April 15, 2011, Plaintiff Green was hired as a salaried Woodhaven manager responsible for marketing. During her 16 months of employment Plaintiff Green often worked 60-70 hours per week.

12. That in or around July, 2012, Plaintiff Green was informed by her doctor that she would need to undergo a hysterectomy as a result of her medical history of significant endometriosis and two leaking cysts. The surgery was scheduled for August 9, 2012, and Plaintiff Green informed every member of Woodhaven's management team of the date of the upcoming procedure and the necessity of six weeks of recovery time, a period in which she would be unable to work.

13. That immediately after learning of the need for extended time off to address her serious medical condition and physical impairment, Chance Maguire, Woodhaven's general manager and Plaintiff Green's direct supervisor, began to treat her much differently and much more negatively then he had immediately prior to learning of her medical condition. For instance,

3

Mr. Maguire stopped responding to any of Ms. Green's emails and discontinued their weekly meeting, which had been ongoing throughout Plaintiff's employment, without explanation.

14. That, prior to the scheduled surgery, Plaintiff Green met with Defendant manager Shelly Shumate, who performed human resources functions for Woodhaven, to discuss the requisite paperwork for FMLA leave. Ms. Shumate informed Plaintiff Green, illogically, that no paperwork would be needed due to the fact that the surgery would be covered by Ms. Green's husband's medical insurance policy.

15. On or about August 7, 2012, two days before the scheduled surgery, Mr. Maguire informed Plaintiff Green that her employment was terminated due to the upcoming procedure and because he didn't know how long Ms. Green would be off work and that someone needed to do her job." When Plaintiff Green objected to this decision and her unfair treatment, Mr. Maguire shouted "you're fired!"

16. That on or about April 9, 2009, Plaintiff Michaels was hired as a salaried Woodhaven manager responsible for the bar area and social events.

17. That in early, 2012, Plaintiff Michaels informed Mr. Maguire, Woodhaven's general manager and his direct supervisor, of the need for him to have orthopedic surgery to address an ongoing knee injury. The surgery was scheduled and performed on March 1, 2012, and afterwards Plaintiff Michaels was unable to walk.

18. That, a few days into his recovery, Mr. Michaels began to receive constant phone calls from Woodhaven employees regarding various and escalating problems being experienced at Woodhaven as a result of Mr. Michaels' absence and the inability of the newly-hired assistant manager to operate the bar.

19.     That on or about March 12, 2012, Mr. Maguire phoned Plaintiff Michaels, complaining that the bar was "beginning to fall apart." After Mr. Michaels offered to return to work in a wheelchair or crutches, Mr. Maguire rejected the offer, told Plaintiff that he could not continue to sit back and watch the bar fall apart and that Defendant needed a new manager right away. After insulting Plaintiff's role at the club as something that "a trained monkey could do," Mr. Maguire informed Plaintiff Michaels that, while he would consider giving him some bartending shifts after he recovered, Woodhaven was moving forward with hiring a new manager to replace Plaintiff Michaels.

## COUNT ONE
## FMLA DISCRIMINATION AND RETALIATION

20.     That the Plaintiffs incorporate by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Complaint.

21.     That the aforementioned conduct of Woodhaven is in direct violation of 29 USC §2601 et seq. and in particular 29 USC §2615, which forbids interference, discrimination, and retaliation against an employee for exercising his or her rights under the Act.

22.     That Plaintiffs were each discriminated against, and ultimately terminated, as a result of the request and taking of lawful leave to have surgery performed to address a serious health condition, in direct violation of 29 USC §2615(a)(2). Plaintiffs' request and taking of FMLA time was a substantial motivating factor in the aforementioned adverse employment actions taken against Plaintiff Green and Plaintiff Michaels.

23.     That Plaintiffs were retaliated against, and ultimately terminated, as a result of their filing a charge of FMLA discrimination, in direct violation of 29 USC §2615(b)(1).

Plaintiffs' complaint of FMLA discrimination was a substantial motivating factor in the aforementioned adverse employment actions taken against them.

24. That, as a direct and proximate result of Defendant's wrongful and illegal termination, which occurred in the absence of good faith, Plaintiffs are each entitled to lost wages, reinstatement and/or front pay in lieu of same, compensatory damages, embarrassment, humiliation and mental anguish, an injunction to enjoin further violations of 29 USC §2601 et seq. by the Defendant, their actual damages, and costs of the lawsuit, including a reasonable attorney fee, and interest on all claimed damages, pursuant to 29 USC §2617.

## COUNT TWO
## DISABILITY DISCRIMINATION

25. That the Plaintiffs incorporate by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Complaint.

26. That the aforementioned conduct of Woodhaven is in direct violation of 42 USC §12112 and KRS 344.040, as Defendant discriminated against Plaintiff Green and Plaintiff Michaels, each of whom is a qualified individual with a disability as defined by statute, because of and as a result of said disability.

27. That Woodhaven failed to provide reasonable accommodations to Plaintiffs and/or engage in the interactive accommodation process with either Plaintiff.

28. That each Plaintiff is entitled to punitive damages in an amount sufficient to punish Defendant for its willful, wanton, oppressive, fraudulent, malicious and grossly negligent conduct.

29. That as a direct and proximate result of this discriminatory conduct by Defendant, each Plaintiff has suffered, and continues to suffer, embarrassment, humiliation, mental anguish, and loss of both past and future wages.

WHEREFORE, the Plaintiffs prays for judgment from the Defendant as follows:

1. Compensatory damages in the sum of $400,000.00 per Plaintiff;

2. Punitive damages in the sum of $200,000.00 per Plaintiff;

3. Medical Expenses, past and future;

4. Reinstatement and Injunctive Relief, or front pay in lieu of same;

5. Trial by jury on any and all issues so triable;

6. For their costs herein expended, including a reasonable attorney's fees; and

7. For any and all other relief to which they may otherwise be properly entitled.

Respectfully Submitted By,

JAMES M. BOLUS, JR.
600 West Main Street, Suite 500
Louisville, Kentucky 40202
(502) 584-1210
(502) 584-1212 (facsimile)
bo@boluslaw.com

MICHAEL A. AUGUSTUS
600 West Main Street, Suite 500
Louisville, Kentucky 40202
(502) 584-1210
(502) 589-1212 (facsimile)
mike@boluslaw.com

/s/ Michael A. Augustus