UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:13-CV-00318-TBR

BETHENY GREEN and RICHARD MICHAELS                              Plaintiffs

v.

WOODHAVEN COUNTRY CLUB, INC,                                    Defendant

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment. (Docket No. 23). The Plaintiffs have replied, (Docket No. 36), and the Defendants have responded, (Docket No. 35). This matter is now ripe for adjudication. For the following reasons, the Court will **GRANT in part and DENY in part** the Defendants' Motion for Summary Judgment.

## BACKGROUND

Plaintiffs Betheny Green ("Green") and Richard Michaels ("Michaels") bring this lawsuit against Woodhaven Country Club, Inc. Their remaining claims are for discrimination and retaliation under 29 U.S.C. § 2601, the Family Medical Leave Act ("FMLA"), and discrimination under KRS 344.010, the Kentucky Civil Rights Act.

Green began work for Woodhaven on April 15, 2011 and was responsible for marketing. She alleges that she was unlawfully terminated on August 7, 2015. Michaels began working for Woodhaven on April 8, 2009 as the manager for the bar and social events. Michaels alleges that he was unlawfully terminated on March 12, 2012. Both allege that they suffer from a physical impairment and are "qualified individuals" as defined by 42 U.S.C. §12101 *et seq.* and KRS 344.010 *et seq.*

Plaintiff Green

1

Green alleges that she suffers from "debilitating endometriosis which [has] required at least 12 prior gynecological surgeries in the last 17 years." (Docket No. 1). Around July of 2012, she was informed that she would need to undergo a hysterectomy, which was scheduled for August 9, 2012. Green states that she met with Shelly Shumate ("Shumate") "to discuss the requisite paperwork for FMLA leave." *Id.* Green alleges that Shumate informed Green that "no paperwork would be needed due to the fact that the surgery would be covered by Ms. Green's husband's medical insurance policy." *Id.*

Via e-mail, Green informed Woodhaven's management team that she would be unable to work for two weeks of recovery time, then she would work from home for four more weeks. (Docket No. 23-4). Green alleges that immediately her manager, Chance Maguire, ("Maguire") began treating her differently and more negatively, and discontinued their weekly meetings. (Docket No. 1). Green alleges that around August 7, 2012, Maguire informed Green that he was terminating her employment. Maguire stated that Green's performance was consistently poor, and that she was fired due her poor performance, and because she refused to cooperate in providing passwords to company databases, social media cites, and other job cycle information when requested. (Docket No. 23).

Plaintiff Michaels

Michaels alleges that he "previously sustained a knee injury which has resulted in multiple surgical procedures and has limited his ability to walk." *Id.* He alleges that in early 2012, he informed Maguire that he needed to have orthopedic surgery to address an ongoing knee injury. The surgery was scheduled and performed on March 1, 2012, and afterwards Michaels alleges that he was unable to walk. He alleges that a few days into his recovery, he began to receive phone calls regarding escalating problems as a result of his absence. On March

12, 2012, Michaels alleged that Maguire informed Michaels "that, while he would consider giving him some bartending shifts after he recovered, Woodhaven was moving forward with hiring a new manager to replace Plaintiff Michaels." *Id.*

## STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

**FMLA Claims**

Woodhaven argues that the FMLA claims cannot move forward because neither plaintiff requested FMLA leave, and both were being paid to work from home during their recovery period. (Docket No 23). The Plaintiffs respond that they did request FMLA leave, and that "whether an employee is being paid while on leave or is going to work at home during their recovery is wholly immaterial to FMLA. Rather, this statute simply provides that an employee must be reinstated after the leave period and may not be fired for exercising or attempting to exercise this right." (Docket No. 36).

Under the FMLA, an eligible employee is entitled to a total of 12 weeks of leave during any 12–month period to care for a spouse, child, or parent with a "serious health condition" or if the employee has a "serious health condition" that renders the employee unable to perform the functions of his job. 29 U.S.C. § 2612(a)(1)(C)—(D). A "serious health condition" is a condition that requires inpatient care or continuing treatment by a health care provider. 29 C.F.R. § 825.114(a). To invoke the protections of the FMLA, an employee must give his employer adequate notice and a qualifying reason for requesting FMLA leave. *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004); *Cavin v. Honda of Am. Mfg.,* 346 F.3d 713, 723–24 (6th Cir .2003). An "employee's request for leave need not expressly invoke the FMLA or even mention the Act, but must provide the employer with enough information to put the employer on notice that an FMLA-qualifying leave is needed." *Brohm v. JH Properties, Inc*., 149 F. 3d 517 (6th Cir. 1998); Family and Medical Leave Act of 1993, § 102(e)(2), 29 U.S.C.A. § 2612(e)(2).

"The issue in an FMLA retaliation claim is whether an employer retaliated or discriminated against an employee because the employee invoked her FMLA rights." *Brady v. Potter*, 476 F. Supp. 2d 745, 758 (N.D. Ohio 2007). "To establish an initial prima facie case of retaliation, a plaintiff must show the following by a preponderance of the evidence: '(1) [she]

4

engaged in an activity protected by the [FMLA]; (2) that this exercise of [her] protected rights was known to the defendant; (3) that defendant thereafter took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.'" *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 Fed. Appx. 330, 338 (6th Cir. 2009).

"For purposes of FMLA, 'serious health condition' entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:

> (2) Continuing treatment by a health care provider.
> A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>> (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>>> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist ) under orders of, or on referral by, a health care provider . . ."

29 CFR § 825.114.

It is not necessary that the employees requested FMLA leave specifically, as it appears that they both requested ostensibly qualifying leave.  Further, the fact that the employees were able to take advantage of paid leave does not necessarily preclude them from bringing this claim, and the Defendants cite no case holding as much. *See, e.g. Cox-Frietch v. Ohio Bureau of Workers' Comp.*, 507 Fed. Appx. 561, 564 (6th Cir. 2012) ("The FMLA specifically allows an employer to require an employee to substitute accrued paid sick leave for unpaid FMLA leave.) (citing 29 U.S.C. § 2612(d)(2)(B); 29 C.F.R. § 825.207(a)). Thus, the Motion for Summary Judgement is denied as to the FMLA claims.

Kentucky Civil Rights Act Claims

Woodhaven argues that both plaintiffs' claims under the KCRA should be dismissed. (Docket No. 23). Woodhaven asserts that Green does not have a protected disability and that the evidence shows that she was discharged as a result of poor work performance and insubordination. *Id.* As for Michaels, Woodhaven argues that he does not have a protected disability, and that there is no evidence that he was discharged at all. *Id.*

In interpreting the KCRA, Kentucky courts look to federal precedent interpreting federal civil rights statues such as the ADA. *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 591-92 (Ky. 2003) (noting that "[t]he Kentucky Civil Rights Act was modeled after federal law, and our courts have interpreted the Kentucky Act consistently therewith" to conclude "we deem it appropriate to follow federal precedent"); *Hallahan v. The Courier-Journal*, 138 S.W.3d 699, 705 (Ky. Ct. App. 2004) ("Given similar language and the stated purpose of KRS Chapter 344 to embody the federal civil rights statutes, including the Americans with Disabilities Act (ADA), this court may look to federal case law in interpreting the Kentucky Civil Rights Act with respect to Hallahan's claim of disability discrimination under KRS 344.040.").

"In order to establish a prima facie case of discrimination based on a disability, the plaintiff must show: (1) that he had a disability as that term is used under the statute; (2) that he was 'otherwise qualified' to perform the requirements of the job, with or without reasonable accommodation; and (3) that he suffered an adverse employment decision because of the disability." *Hallaha*, 138 S.W.3d at 706-07 (citations omitted). The employer must then offer a legitimate, nondiscriminatory reason for its action. *See Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). If the employer satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. *Id.*

Kentucky Revised Statute § 344.010(4) defines "disability" as:

6

> (a) A physical or mental impairment that substantially limits one (1) or more of the major life activities of the individual;
> (b) A record of such an impairment; or
> (c) Being regarded as having such an impairment.

The term "substantially limits" is to "be construed broadly in favor of expansive coverage" and is "not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1). An impairment is a disability if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." *Id*. However, it "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id*. The nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact or expected permanent or long-term impact of or resulting from the impairment are factors to be considered in determining whether an individual is substantially limited in a major life activity. *Howard Baer*, 127 S.W.3d at 593. "Examples of 'major life activities include, among other things, walking, seeing, hearing, performing manual tasks, caring for oneself, speaking, breathing, learning, and working.'" *Brown v. Humana Ins. Co.*, 942 F. Supp. 2d 723 (W.D. Ky. 2013) (citation omitted).

<u>Plaintiff Green</u>

In her Complaint, Green did not explicitly identify a major life activity substantially limited by her impairment. The Court noted earlier that in Green's Response to the Defendant's Motion to Dismiss, (Docket No. 8), she alleged that the major life activity that is limited is "working." However, in Green's response to Woodhaven's interrogatories, Green stated that other than vacation days, she was never absent from work. (Docket No. 23-7). The Plaintiffs were permitted to file a Response to Defendant's Motion nearly a month late. Attached to that

7

Response is a document labeled as Green's Affadavit, signed by Green but not certified as being sworn under oath. In this document, Green states:

> My medical history is significant for endometriosis and leaking ovarian cysts. Since I was 21, I had a total of twelve gynecological surgeries to address these long-term medical issues. This physical condition is extremely painful and, when suffering the effects of endometriosis, I am unable to do many things that I would otherwise be able. For instance, due to the treatment required to address my endometriosis, such as pain medication and repeated gynecological procedures, I am unable to work at times due to this medical condition.

(Docket No. 31-1).

The first element of the prima facie case is that the plaintiff has a disability as used in the statute. *See Hallaha*, 138 S.W.3d at 706-07 (citations omitted). There is precedent indicating that gynecological problems can be considered statutory disabilities. "There are numerous disorders of the reproductive system, such as dysmenorrhea and endometriosis, which are so painful that they limit a woman's ability to engage in major life activities such as walking and working." *Bragdon v. Abbott*, 524 U.S. 624, 660 (1998).

Before filing this signed statement, (Docket No. 31-1), Green had not produced any evidence supporting her allegation that her condition impairs her ability to work, nor had she specified any particular tasks that she was incapable of performing. The fact that she did not actually miss any days of work aside from vacation belies this. While Green did expect to be unable to work for two weeks following her surgery, this is not enough to establish that she is substantially impaired from the major life activity of working. *Howard Baer*, 127 S.W.3d at 593. The new statement changes this analysis. Here, Green does state that she was "unable to work at times due to this medical condition." (Docket No. 36-1).

The Defendants argue that the Court should not consider this document at all because: 1) it is not sworn, and 2) it contradicts Green's previous sworn response to Defendants' interrogatories, in which she stated she had not missed work aside from vacationing. (Docket

8

No. 23-7). The Defendants cite to *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986), where the Sixth Circuit stated that "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." While this is a very close call, the statements are not directly contradictory and the Court will consider Green's statement. Because she has alleged that her condition impairs a major life activity, she satisfies this element of the prima facie case.

Green must also show that she suffered an adverse employment decision because of the disability. In her Complaint, she alleged that Maguire "began to treat her much differently and much more negatively then he had immediately prior to learning of her medical condition [by not] responding to any of Ms. Green's emails and discontinued their weekly meeting, which had been ongoing throughout Plaintiff's employment, without explanation." (Docket No. 1). Green adds details in her signed statement, stating that "[o]n August 7, 2012, two days prior to my scheduled surgery, I overheard Mr. Maguire telling another Woodhaven employee, Angela Dishon, that he needed to hire someone else." (Docket No. 36-1). Further:

> I then went to Mr. Maguire's office. During the conversation Mr. Maguire became visibly irritated. I then asked him if I was getting fired because of the surgery and he said "we need to talk." He then told me that I was being fired because he didn't know how long I would be off work and he needed someone there at the club to do my job. Mr. Maguire then began bringing up several supposed issues with my job performance over the preceding few months and yelling at me. He told me I was "done" and instructed me to "get out!" When I asked him whether that meant to leave his office or that I was fired, he screamed, "You're Fired!"

*Id.*

Here, the temporal proximity of Green's leave and her termination are enough to satisfy this element of her prima facie case. The Sixth Circuit has stated that:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent

9

> adverse employment action, the employee must couple temporal proximity with
> other evidence of retaliatory conduct to establish causality.

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (internal citation omitted). The *Mickey* court also noted that other Circuits found in "rare cases, temporal proximity alone may suffice to show a causal connection." *Id*; *see also Montell v. Diversified Clinical Servs.*, 757 F.3d 497, 505 (6th Cir. 2014) ("temporal proximity alone can be enough").

Thus Green has satisfied her prima facie case. However, Woodhaven has offered a legitimate non-discriminatory reason for her termination. *See Monette*, 90 F.3d at 1186. Woodhaven manager Maguire said that Green's performance was "poor most of the time," from "day one." (Docket No. 27-2). Maguire referred to notes he kept throughout Green's employment, and described many issues with her performance, including Green's: 1) use of poor grammar and improper language on social media sites; 2) inclusion of incorrect dates on promotional materials; 3) posing inappropriately for a picture on top of the bar; 4) failure to learn basic membership information; 5) missing meetings; 6) failure to complete an assigned video project and a newsletter article project; and 7) forgetting or neglecting important job duties. (Docket No. 27-2; Docket No. 27-3). Maguire stated that Green was terminated because of her poor job performance and because she refused to provide passwords to company databases, social media cites, and other job cycle information when requested to do so before her surgery. *Id.* This constitutes a legitimate, non-discriminatory reason for her termination. Green has not introduced evidence showing that the proffered explanation is pretextual. Thus, the Motion for Summary Judgment is granted as for Green's claim under the KCRA.

<u>Plaintiff Michaels</u>

Michaels specifically alleged in his Complaint that he is limited from the major life activity of walking. While Woodhaven asserts that Michaels does not have a qualifying

10

disability, there is a a factual issue regarding his impairment in walking. Woodhaven also argues that Michaels has not satisfied the element of his prima facie case of showing that he suffered an adverse employment action. Woodhaven argues that Michaels was not fired, and rather that he quit. Maguire alleges that Michaels was not sure whether he wanted to return to Woodhaven following his surgery, that he in fact did not return to work, and finally that he did not show up for a meeting with Maguire on March 30, 2012 and instead travelled to New Orleans to attend the men's NCAA Final Four. (Docket No. 23-2). While the Plaintiffs' Complaint alleges that Michaels was terminated, there was no evidence to support that allegation. However, the Plaintiffs submitted the sworn Affidavit of Richard Michaels two days past the Court's deadline. Although it was late, the Court will consider the statements within. There, Michaels states that:

> On March 12, 2012, Mr. Maguire called me and complained that the bar was having serious problems and that the assistant manager was unable to operate it. In response, I offered to come back to work on crutches or in a wheelchair but Mr. Maguire declined the offer. Mr. Maguire then stated that he could not stand by and watch the bar fall apart and that he was going to hire a new manager right away. He also told me that he should be able to get any of the current bartenders to replace me because "a trained monkey could do it." Mr. Maguire made it clear during this conversation that I was no longer Woodhaven's bar manager.

(Docket No. 32-1). Considering this statement, Michaels has presented sufficient evidence to satisfy his prima facie case. Thus, the Motion for Summary Judgment is denied as to Plaintiff Michaels.

## CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment, (Docket No. 23), is **GRANTED in part and DENIED in part**.

11